IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WICOMICO NURSING HOME, *as assignee and/or authorized representative of* Margaret Smith, Peggy Outten, Ruby Bounds, Shirley Hackett, Carol Snyder, and William Soil, et al., | * * * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No.: RDB-16-1078 |
| LOURDES R. PADILLA, *in her Official Capacity as Secretary of the Maryland Department of Human Services*, | * * | |
| and | * | |
| DENNIS R. SCHRADER, *in his Official Capacity as Secretary of the Maryland Department of Health*, | * * | |
| Defendants.[1] | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This is the third of three similar actions filed in this Court over the past three years based on the allegedly unlawful processing of Medicaid benefit applications by the Secretaries of the Maryland Department of Human Services ("MDHS") and the Maryland Department of Health ("MDH"). *See Oakview SNF LLC v. Malhotra, et al.*, RDB-14-2966; *Lorien Life Center Baltimore County Inc., et al v. Malhotra, et al.*, MJG-15-2865. In the instant case,

---

[1] Defendants Lourdes R. Padilla and Dennis R. Schrader, in their official capacities as Secretary of the Maryland Department of Human Services and Secretary of the Maryland Department of Health, respectively, are substituted for named defendants Sam Malhotra and Van Mitchell, their predecessors in those positions. *See* ECF No. 31-1 at 4, n. 1.

1

plaintiffs Wicomico Nursing Home ("Wicomico"), Oakview SNF, LLC d/b/a Oakview Rehabilitation and Nursing Center ("Oakview"),[2] Anchorage Nursing, LLC d/b/a Anchorage Rehabilitation and Nursing Center ("Anchorage"), and Brooke Grove Foundation ("Brooke Grove") (collectively, "plaintiffs" or the "Facilities"), as assignees and/or authorized representatives of eleven (11) of their current and former residents,[3] have filed a putative class action complaint against defendants Lourdes R. Padilla ("Padilla") and Dennis R. Schrader ("Schrader") (collectively "defendants" or the "Secretary Defendants"), in their official capacities as Secretary of the Maryland Department of Human Services ("MDHS") and Secretary of the Maryland Department of Health ("MDH"), respectively.

In their Amended Complaint, plaintiffs allege that defendants have violated federal law by failing to timely issue Medicaid eligibility determinations as required under the federal Medicaid Act, 42 U.S.C. §§ 1396(a)(8) and 1396(a)(1), and its implementing regulations, 42 C.F.R. § 435.912 and 42 C.F.R. § 435.930. (ECF No. 30 at 2.) Plaintiffs also allege that the "systematic unjustified delays in processing of Medicaid applications at [MDHS] and [MDH]…constitutes unlawful discrimination" in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (*Id.*) In addition, plaintiffs allege that defendants violated the residents' Due Process rights under the Fourteenth Amendment to the United States Constitution by permitting these systematic delays to continue and by issuing certain misleading and confusing communications to the residents during the processing of their

---

[2] Plaintiff Oakview was also a party to the RDB-14-2966 and MJG-15-2865 cases.

[3] The six current residents named in the First Amended Complaint are: Cheryl Hart, Peggy Outten, Shirley Hackett, Carol Snyder, William Soil, and Benjamin Winder. (ECF No. 30 at ¶¶ 5-15.) All six current residents have been granted and are receiving Medicaid benefits. (ECF Nos. 31-2, 31-3.) The five former residents named in the First Amended Complaint are all deceased: Margaret Smith, Ruby Bounds, Frances Johnson, Eloise Roberson, and Mary Imhoff. (ECF No. 30 at ¶¶ 5-15.)

2

applications for benefits.  (*Id.*)  Through this action, plaintiffs seek declaratory and injunctive relief, as well as money damages for expenses previously incurred by the residents while they awaited determinations on their applications for Medicaid benefits.

Now pending before this Court is defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment ("Defendants' Motion").  (ECF No. 31.)  In support of their Motion, defendants assert that they are entitled to state sovereign immunity under the Eleventh Amendment to the United States Constitution and, thus, that this Court is without subject matter jurisdiction over this action.  (ECF No. 31-1 at 16-19.)  Defendants also raise several defenses under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2016).  For the reasons stated below, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED, and this case is DISMISSED.

## BACKGROUND

As noted above, within the past three years, plaintiffs' counsel, the law firm of Schutjer Bogar, LLC a/k/a sb2, Inc., has litigated in this Court two strikingly similar actions based on MDHS and MDH's allegedly unlawful processing of Medicaid benefit applications. *Oakview SNF LLC v. Malhotra, et al.*, RDB-14-2966; *Lorien Life Center Baltimore County Inc., et al v. Malhotra, et al.*, MJG-15-2865.  In addition to the similar nature of the allegations made, plaintiff Oakview previously sought relief on behalf of resident Cheryl Hart in the RDB-14-2966 case.  The undersigned dismissed the *Oakview* case on May 8, 2015 following a hearing at which several of the arguments again raised in this case were addressed.  (RDB-14-2966, ECF No. 36.)  Similarly, Judge Garbis of this Court dismissed the *Lorien* case by written

3

Memorandum and Order (MJG-15-2865, ECF No. 21) dated April 28, 2016—that is, only two weeks after the instant case was filed—which explained that the retrospective relief sought by plaintiffs placed their claims outside of the *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 (1908), exception to the doctrine of state sovereign immunity. *Lorien Life Ctr. Baltimore Cty., Inc. v. Malhotra*, MJG-15-2865, 2016 WL 1696451, at *2 (D. Md. Apr. 28, 2016). Relevant to the instant case, Judge Garbis expressly rebuffed plaintiffs' argument that the relief sought was prospective, as all the residents identified there were either already receiving Medicaid benefits, or were deceased. *Lorien*, 2016 WL 1696451, at *2.[4] No appeal was taken in either case.

In the case now before this Court, the Facilities again allege that the Secretary Defendants failed to "comply with their obligation to process and approve Medicaid applications for residents in a long-term care facility pursuant to federal law." (ECF No. 30 at 2.) As noted above, the Facilities allege that defendants' delays in rendering Medicaid eligibility determinations violate the Medicaid Act, the Americans with Disabilities Act, and the Residents' Due Process rights under the Fourteenth Amendment. *See supra*, at 2; ECF No. 30 at 2-3.

Pertinent to this Court's analysis is the status of each of the residents on whose behalf the Facilities have filed suit. The table below indicates the name of each resident, the name of the facility where he/she resides (or resided), and, for the living residents, the date on which he/she began receiving Medicaid long-term care benefits:

---

[4] Notably, and despite defense counsel's having advised plaintiffs' counsel of the prior cases—to the extent such advice was even necessary given plaintiffs' firm's involvement in the prior actions—plaintiffs' counsel makes no reference to the prior actions in their pleadings or briefs, nor tries to distinguish those cases from that now before this Court. (ECF Nos. 31-4, 31-5.)

4

| Resident Name | Facility | Effective Date of Benefits | Reference |
|---|---|---|---|
| Cheryl Hart | Oakview | June 2014 | (ECF No. 31-3 at ¶ 11) |
| Margaret Smith | Wicomico | [Deceased] | (ECF No. 30 at ¶ 6) |
| Peggy Outten | Wicomico | March 2016 | (ECF No. 31-2 at ¶ 10) |
| Ruby Bounds | Wicomico | [Deceased] | (ECF No. 30 at ¶ 8) |
| Shirley Hackett | Wicomico | October 2015 | (ECF No. 31-2 at ¶ 8) |
| Carol Snyder | Wicomico | January 2016 | (ECF No. 31-2 at ¶ 7) |
| William Soil | Wicomico | October 2015 | (ECF No. 31-2 at ¶ 11) |
| Benjamin Winder | Anchorage | October 2012 | (ECF No. 31-2 at ¶ 9) |
| Frances Johnson | Anchorage | [Deceased] | (ECF No. 30 at ¶ 13) |
| Eloise Roberson | Brooke Grove | [Deceased] | (ECF No. 30 at ¶ 14) |
| Mary Imhoff | Brooke Grove | [Deceased] | (ECF No. 30 at ¶ 15) |

As this table reflects, all of the residents whom the Facilities allege were harmed by defendants' conduct are currently receiving Medicaid long-term care benefits, or are deceased.

Plaintiffs' original Complaint was filed in this Court on April 11, 2016. (ECF No. 1.) Defendants then filed a Motion for a More Definite Statement on June 10, 2016. (ECF No. 5.) Plaintiffs opposed defendants' motion, but filed a first, and, later, a second Motion for Leave to File an Amended Complaint. (ECF Nos. 14, 27.) Plaintiffs were permitted to file the now-governing First Amended Complaint, and the Motion for More Definite Statement was withdrawn. (ECF No. 29.) Defendants then filed the now-pending Motion to Dismiss. (ECF No. 31.) This Motion is fully ripe for this Court's resolution.

## STANDARDS OF REVIEW

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

As this Court explained in *Dennard v. Towson University*, "[a]n assertion of governmental immunity is properly addressed under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows defendants to challenge an action for lack of subject matter

5

jurisdiction." *Dennard v. Towson Univ.*, 62 F. Supp. 3d 446, 449 (D. Md. 2014) (citing *Smith v. WMATA,* 290 F.3d 201, 205 (4th Cir. 2002)). *See also Lorien*, 2016 WL 1696451, at *2. "When a governmental entity challenges jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proving that subject matter jurisdiction exists. The district court is to 'regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Dennard*, 62 F. Supp. 3d at 449 (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991)). "The district court should only grant the Rule 12(b)(1) motion to dismiss 'if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Id.* (quoting *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999)).

**II.     Motion to Dismiss For Failure to State a Claim**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brockington v. Boykins*, 637 F.3d 503, 506 (4th Cir. 2011).

In reviewing a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017).

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). "Consideration of a document attached to a motion to dismiss ordinarily is permitted only when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (internal quotations omitted). Nor does a court "convert a motion to dismiss to a motion for summary judgment when it takes judicial notice of public records… [or] of adjudicative facts under Federal Rule of Evidence 201." *Goldfarb*, 791 F.3d at 506.

## ANALYSIS

I. **The Facilities Do Not Seek Prospective Injunctive Relief; They May Not Avail Themselves of the *Ex Parte Young* Exception to State Sovereign Immunity**

In support of their Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Secretary Defendants argue that this suit is barred by the State of Maryland's sovereign immunity. (ECF No. 31-1 at 16.) Because defendants Padilla and Schrader are sued in their official capacities as Secretary of the Maryland Department of Human Services and Secretary of the Maryland Department of Health, respectively, they

7

argue, they are entitled to immunity under the Eleventh Amendment to the United States Constitution. (*Id.* at 17.) While defendants recognize that "state officials may be sued in federal court for injunctive relief" under the doctrine set forth in *Ex Parte Young* and its progeny, they properly note that *Young*'s "exception to immunity permits only prospective, not retrospective, relief." (*Id.*) (citing *Ex Parte Young*, 209 U.S. at 159, 28 S.Ct. 441 (1908).)

In opposition to Defendants' Motion, the Facilities rely on the *Young* exception to state sovereign immunity and, as they must, seek to frame the relief they seek as prospective in nature. (ECF No. 33 at 8-9.) Specifically, the Facilities assert that "Defendants are currently violating sections of the Federal Medicaid Act and its implementing regulations…for persons who are eligible and require nursing facility services." (*Id.* at 8.) They further state that, "[i]n the matter before this Court, nowhere have Plaintiffs sought a fixed amount of damages for past liability. Plaintiffs are clear that they are seeking to enjoin Defendant from continued violations of the Federal Medicaid Act." (*Id.* at 9.)

The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment immunizes states, state agencies, state instrumentalities, and state officials sued in their official capacities from suit by private parties in federal court." *Windsor v. Bd. of Educ. of Prince George's Cty.*, TDC-14-2287, 2016 WL 4939294, at *10 (D. Md. Sept. 13, 2016). *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Bland v. Roberts*, 730 F.3d 368, 389-91 (4th Cir. 2013).

The immunity from suit accorded to state officials is not absolute. Plaintiffs here rely on the exception to state sovereign immunity first established *Ex Parte Young*, 209 U.S. at 159, 28 S.Ct. 441 (1908), which allows "private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184 (4th Cir. 2002). As the United States Court of Appeals for the Fourth Circuit has explained:

> This exception to sovereign immunity is based on the notion, often referred to as "a fiction," that a State officer who acts in violation of the Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. 441. A State officer acting in violation of federal law thus loses "the 'cloak' of State immunity," *Bragg v. West Virginia Coal Ass'n,* 248 F.3d 275, 292 (4th Cir. 2001), *cert. denied,* 534 U.S. 1113, 122 S.Ct. 920, 151 L.Ed.2d 885 (2002), because in such a situation, "[t]he State has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Ex Parte Young,* 209 U.S. at 160, 28 S.Ct. 441.

*Id.* at 184. Following *Young*, the Supreme Court has clarified that "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief…and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S. Ct. 1347, 1362 (1974).

Notwithstanding the Facilities' assertion that they are seeking prospective relief, they are unable to demonstrate how the relief sought in *this suit* on behalf of *these residents* can be characterized as "prospective" so as to fall within the *Young* exception. There is, of course, no *prospective relief* available to the deceased residents. *See Nordwall v. PHC-LAS Cruces, Inc.*, 960 F. Supp. 2d 1200, 1245, n. 25 (D.N.M. 2013). And the other residents for whom the

Facilities have filed suit are *already receiving* Medicaid long-term care benefits.[5] *See* Table, *supra*, at 5. While the Facilities may have an interest in compelling the Secretary Defendants to process Medicaid long-term care applications more quickly and more predictably, they do not meet their burden to show that the relief which *these residents* seek is prospective in nature.

The First Amended Complaint itself makes clear the retrospective nature of the relief sought by the Facilities. Among the injunctive relief sought in the First Amended Complaint is an "Order requiring the Defendant [*sic*] to automatically approve the [residents]' Medicaid benefits." (ECF No. 30 at ¶ 131.) Given the status of each of the residents, the desired order would be, at best, moot.[6] Similarly, no fewer than three paragraphs of the First Amended Complaint seek compensatory and emotional distress damages for defendants' allegedly unlawful conduct. (*Id.* at ¶¶ 116, 122, 127.) If, as the Facilities assert, the target of their suit were only prospective relief, it is unclear how they would be entitled to damages or the proper measure thereof. As defendants aptly note, "all that Plaintiffs could possibly seek is **retroactive benefit payments** rather than a prospective remedy"—relief which is expressly prohibited under *Edelman*. (ECF No. 31-1 at 18) (emphasis added.)

In sum, as the relief which the Facilities seek is not prospective in nature, they are unable to avail themselves of the *Young* exception, and the Secretary Defendants are entitled

---

[5] The status of all of the residents distinguishes this action from the supplemental authority submitted by plaintiffs. (ECF No. 35) (citing *Doctors Nursing & Rehab. Ctr., LLC v. Norwood*, 2017 WL 2461544 (N.D. Ill. June 7, 2017).) In *Norwood*, the court explained that the patient plaintiffs "fall into two groups: (1) those who are awaiting Medicaid eligibility determinations and (2) those who, despite receiving approval, are still awaiting Medicaid benefits." *Norwood*, 2017 WL 2461544, at *1. The residents here, by contrast, already are receiving Medicaid benefits or are deceased.

[6] *See* ECF No. 31-1 at 19.

to state sovereign immunity under the Eleventh Amendment. Accordingly, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction must be GRANTED.

## II. Even if the Facilities Were Able to Avail Themselves of the *Ex Parte Young* Exception, They Fail To State A Plausible Claim That The Residents' Due Process Rights Were Violated

Defendants argue that even if they were not entitled to state sovereign immunity, the Facilities have not alleged a plausible claim that the residents' due process rights were violated. (ECF No. 31-1 at 23-24.) Specifically, the Secretary Defendants argue that, "[e]ven assuming that there were delays in the processing of the Residents' Medicaid applications, the Residents nonetheless had the opportunity to pursue appeals of the denials of their applications or to seek redress through the [state] administrative appeals process for undue delay in the processing of those applications." (*Id.* at 24.) Plaintiffs argue in opposition that defendants' confusing and arbitrary processing of the residents' Medicaid applications deprived them of the opportunity to avail themselves of the appropriate state administrative processes. (ECF No. 33 at 14.)

A plaintiff alleging a procedural due process violation must show that he/she was deprived of a protected liberty or property interest without proper notice. The Supreme Court has explained that "[t]he notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314–15, 70 S. Ct. 652, 657 (1950) (internal citations omitted).

Pertinent to the instant case, Maryland law accords Medicaid benefit applicants the opportunity for a fair hearing before an Administrative Law Judge ("ALJ") if:

> (1) A Program applicant claims their **application for Program eligibility is denied**;
> …
> (3) A Program applicant claims their application for Program eligibility, or any part thereof, **is not acted upon within 30 days from the date of application or 60 days** from the date of application in the case of determination of disability;
> (4) A Program recipient asserts their claim for Program services has been **erroneously denied** or is **not acted upon with reasonable promptness**;
> (5) A Program recipient asserts that the **Program has acted erroneously**…

Md. Code Regs. 10.01.04.02(A) (emphasis added). Thus, while the Facilities challenge the manner in which defendants processed the residents' applications, it cannot be said that a meaningful opportunity to challenge defendants' actions was unavailable to the residents so as to give rise to a possible due process violation. To the contrary, the First Amended Complaint alleges that four of the residents—Margaret Smith, Shirley Hackett, Carol Snyder, and William Soil—*did* avail themselves of the state administrative process.[7] (ECF No. 30 at ¶¶ 6, 9, 10, 11.) The fact that these residents (or the other residents who did not file administrative appeals) did not seek further relief through the state administrative and judicial processes does not give rise to a procedural due process claim in federal court. Thus, even if plaintiffs' First Amended Complaint were properly before this Court—which it is not—they fail to state a plausible claim that their due process rights were violated.[8]

---

[7] The Complaint does not indicate whether any of these individuals pursued further relief in a Maryland Circuit Court. (ECF No. 30 at ¶¶ 6-15.) It appears, however, that it was unnecessary for any of the residents to pursue further relief on account of (1) death or (2) the granting of the relief sought. *See* Table, *supra*, at 5.

[8] As the residents' claims were not fully litigated through the state administrative and judicial processes, defendants' arguments that this action is barred as *res judicata* or based on the *Rooker-Feldman* doctrine are not entirely persuasive. (ECF No. 31-1 at 19-23.) *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct.

12

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 31) is GRANTED, and this case is DISMISSED.

A separate Order follows.

Dated: August 7, 2017 \_\_\_\_/s/_____
Richard D. Bennett
United States District Judge

---

149 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482–86, 103 S.Ct. 1303 (1983). Indeed, "[t]he Supreme Court has noted that the *Rooker–Feldman* doctrine 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Altenburg v. Caliber Home Loans, Inc.*, RDB-16-3374, 2017 WL 2733803, at *7 (D. Md. June 26, 2017) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005)).